UNITED STATES

v.

**Terry W. ROE, 408 19 6204, Seaman Apprentice (E–2), U.S. Navy.**

**NMCM 82 3466.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 17 Dec. 1981.

Decided 28 Feb. 1983.

MAJ Joseph M. Poirier, USMC, Appellate Defense Counsel.

LT Steven P. Benson, JAGC, USNR, Appellate Government Counsel.

Before GLADIS, Senior Judge, and BYRNE and GARVIN, JJ.

GARVIN, Judge:

Contrary to his plea, at a special court-martial consisting of a judge alone, appellant was found guilty of an unauthorized absence from the Naval Administrative Command, Naval Training Center, San Diego, California commencing 9 November 1978 and terminating on 19 July 1982. He was sentenced to confinement at hard labor for sixty days, forfeiture of $367.00 per month for three months, reduction to pay grade E–1 and to be discharged from the U.S. Navy with a bad-conduct discharge. The sentence was approved by the convening and supervisory reviewing authorities.

On appeal, appellant assigns as error that:

> THE COURT–MARTIAL BELOW LACKED *IN PERSONAM* JURISDICTION OVER THE APPELLANT.

Appellant argues that his enlistment was obtained fraudulently; therefore, his status as civilian never changed. We disagree.

■ The Government presented documentary evidence to sustain its burden on the defense motion to dismiss by establishing by a preponderance of the evidence that the court-martial had the requisite jurisdiction.[1] To overcome the Government's paper case, the accused testified on the motion. He testified that he talked to his recruiter and informed the recruiter that he had a previous juvenile record which included larceny. He also mentioned his "bust" on a marijuana charge. The accused further testified that the recruiter instructed him not to disclose the larceny or marijuana conviction on his application for enlistment. He testified that he was advised to answer, on his enlistment application, that he never used "drugs and stuff like that." He stated that the recruiter so instructed him in spite of the fact that appellant told him he used marijuana "a few times a week." He described his use as "moderate". On cross-examination, the appellant admitted that he

---

1. The standard of proof which the Government must meet on a motion to dismiss for lack of personal jurisdiction is a preponderance of the evidence. However, if the alleged offense is unauthorized absence or desertion, and the defense motion is denied, the issue of military status bears on the ultimate issue of guilt. If the issue is again raised on the merits, at that time, the Government must prove beyond a reasonable doubt that the accused is a member of the military. *United States v. Bailey*, 6 M.J. 965 (N.C.M.R.1979).

was not forced or coerced to sign his enlistment contract. He admitted that he did not make the alleged disclosures to any person other than his recruiter. He stated that the recruiter assisted him in completing his application for enlistment. However, he admitted that the recruiter did not force him to answer any particular question in a specific manner. Appellant contends he did not disclose the adverse information to any other person because the recruiter "... asked me to keep quiet about it." R. 14.

On re-direct, the accused stated that he felt he could effect an enlistment in the Navy without disclosure of the adverse information. But, he felt that disclosure would constitute an impediment to obtaining the program he desired. He further indicated that he was unemployed when he applied for enlistment and that he was getting pressure from his family to enter the service.

The prosecution presented the recruiter's stipulated testimony in rebuttal. The stipulated testimony states that the recruiter was in training at the time of accused's enlistment. Therefore, all of his work was inspected for completeness by his supervisor. During four years of recruiting duty, the recruiter "... never attempted to enlist anyone who was not qualified.... Because of the number of sailors that I recruited in those years, I cannot remember SA ROE. Additionally, I have never told anyone to answer questions on the enlistment application falsely." Appellate Exhibit I–J.

A brief discussion of the recruiting process will assist in disposing of the assignment of error. A recruiter is the person who makes the initial contact with a prospective service applicant. The recruiter is tasked with providing the prospect with information on pay, benefits and programs. Once the prospect is convinced that a service obligation is desired, the recruiter assists the prospect in completing an application for enlistment, DD Form 1966 (DD–1966). The recruiter assists the applicant to ensure that complete data is provided on the DD–1966. The data includes personal information which must be verified during enlistment processing. This data consists of the applicant's name, date of birth, educational achievement, citizenship, prior service, family background, present and prior residences, work experience, foreign travel, and other pertinent information.

The applicant is required to reveal previous unauthorized use of drugs, narcotics or marijuana, dependency status, and all previous involvement with the police or juvenile authorities. Although the applicant is required to certify the truth of the matter contained in the application, the recruiter is tasked with verifying important matters such as birth, age, citizenship, education and previous involvement with juvenile or civil authorities.

Upon completion of the DD–1966, a host of support personnel reverify the information contained within the DD–1966. This DD–1966, Application for Enlistment, is specially designed to provide a quality control system which contains checks and balances to ensure the accuracy of the disclosed information. Once the application is completed, the applicant reports to an Armed Forces Enlistment Processing Center (AFEES)[2] where a physical exam and Armed Services Vocational Aptitude Battery (ASVAB) are administered to ensure the applicant is physically, mentally and morally qualified for enlistment. At that time and place, the DD–1966 is reexamined by support personnel for completeness and accuracy. If it is determined that an applicant is fully qualified for enlistment, a classification specialist reviews the DD–1966 and confers with the applicant to discuss program options. When an applicant declares an intent to accept a program for which he/she is qualified, the appropriate enlistment agreement (DD–4) is prepared, which includes appendices that reflect program, geographical, schooling and other guarantees.

2. This activity is now referred to as a MEPS (Military Enlistment Processing Station).

Before a person is actually enlisted, he or she is subjected to an Entrance National Agency Check/National Agency Check (ENTNAC/NAC) interview. The purpose of that personal, one-on-one interview is to caution the applicant that if any concealed or nondisclosed disqualifying information is discovered, the person will be subject to criminal or administrative sanctions. The applicant is specifically advised to disclose if any person previously told him or her not to reveal information or to lie about any matter during the enlistment process. Military Enlistment Processing Command Regulation 380-1 (MEPCOM 380-1), 18 October 1976.

In the final phase of the enlistment process, before the oath of enlistment is administered, applicants are advised to disclose any false or concealed information. They are briefed on Article 83, Uniform Code of Military Justice, 10 U.S.C. § 883 (Fraudulent enlistment, appointment, or separation.). AR 601-270/AFR 33-7/OP-NAVINST 100.4/MCO P1100.75, paragraph 6-7. The administration of the oath of enlistment and execution of the Enlistment or Reenlistment Agreement—Armed Forces of the United States (DD-4) completes the enlistment process. At page 4 of the DD-4, the following appears: "I have reviewed the information provided by me in my Application For Enlistment-Armed Forces of the United States, DD Form 1966. That information is completely accurate as of this date..." The statement must be signed by the applicant and witnessed by an Armed Forces Representative.

We now turn to a discussion of the facts in this case. The enlistment agreement, DD-4, Appellate Exhibit I-B, contains appellant's signed certification:

... I further understand that my acceptance for enlistment (reenlistment) is based on the information provided by me in my application for enlistment (reenlistment) and if any of that information is knowingly false or incorrect, this agreement may be terminated by the Government, and I may be prosecuted...

That statement was witnessed by a Navy personnelman first class on 12 October 1977. Appellate Exhibit I-B at page 3.

An administrative remarks page, NAVPERS 1070/613 (Page 13), dated 12 December 1977, was admitted as Appellate Exhibit I-C. It contains appellant's acknowledgement that his enlistment program eligibility will be reverified at recruit training. It also reflects his acknowledgement that adverse action may be taken for nondisclosure of information. This Page 13 was signed by appellant and it was witnessed by a lieutenant commander.

Appellate Exhibit I-D is the appellant's application for enlistment. At page 4 of the DD-1966, appellant answered certain questions and denied any prior drug usage or police/juvenile involvement, even though the application contains a warning that the information will be verified with the FBI and other agencies. That warning also states that concealment may subject an applicant to disciplinary action.

The DD-1966 also contains a warning that the Armed Forces Representative who accepts the applicant for enlistment does so in reliance on the information provided by the applicant. That warning was signed by appellant on 19 September 1977. It is the single certification of truthfulness which was prepared or witnessed by the recruiter.

On 12 October 1977, the personnelman first class accepted appellant for enlistment in the U.S. Navy based on the information contained within his application for enlistment. Thereafter, on 12 December 1977, a different personnelman first class had appellant recertify that all information contained in the DD-1966 was still true and correct. Appellate Exhibit I-D, page 6.

Finally, Appellate Exhibit I-G establishes that the Defense Investigative Service granted appellant a confidential clearance on 5 February 1978. The clearance is based on the Entrance National Agency Check which was completed by the Government's investigative agencies on 21 November 1977. The security clearance makes no mention of juvenile or civilian offenses or of adverse matter obtained during background checks.

Having thoroughly reviewed the record and resolved the issue of credibility, which is solely based on the admissible evidence of record, we are convinced that the military judge properly denied the defense motion.

■ We hold that an applicant's failure to disclose adverse background information to Service Representatives, authorized to accept applicants for enlistment on behalf of the Government, during the enlistment process absolves the Government of responsibility for procuring a fraudulent enlistment.

■ By applying the legal test required for the motion, *i.e.*, the preponderance of the evidence, the Government clearly established that there was no recruiter misconduct involved in appellant's enlistment.

■ Next we turn to the merits of the unauthorized absence allegation. The Government presented evidence from the service record of the appellant. It includes appellant's enlistment contract and a NAVPERS 1070/606, Record of Unauthorized Absence, which documents an unauthorized absence from on or about 9 No-

vember 1978 to 19 July 1981. The defense presented the testimony of the accused that he went on unauthorized absence on 7 November 1978 vice 9 November 1978. We find his memory as to the exact date on which he absented himself, which was over three years prior to trial, to be incredible. The evidence admitted and considered on the merits proved beyond a reasonable doubt that the appellant was on active duty at the time of his unauthorized absence and that the absence was not authorized for the period alleged.[3] *United States v. Demings,* 22 U.S.C.M.A. 483, 47 C.M.R. 732 (1973).

Accordingly, the findings and sentence as approved on review below are affirmed.

Senior Judge GLADIS and Judge BYRNE concur.

---

**3.** The testimony given by the accused, under oath, on the motion to dismiss was considered by the trial Court on the merits at the specific request of the defense. R. 58.